PECK, Appellant, vs. PECK, Respondent.

*March 16—April 5, 1905.*

*Guaranty: Consideration: Evidence: Special verdict: Instructions to jury: Immaterial errors.*

1. Permitting defendant to testify generally that she did not receive any consideration for signing the guaranty in suit, if error, was not prejudicial where, without objection, she denied specifically the existence of the agreement which constituted the only consideration claimed.

2. The question being whether a residuary legatee guaranteed payment of the principal of a note of the testator in consideration of the payee's agreement not to present the note as a claim against the estate, evidence that the testator left no estate

from which the note could be paid, and that the legatee knew that fact before the making of the alleged guaranty, was admissible.

3. The question whether defendant, by payments, had ratified a change made in the contract of guaranty after she signed the same, was not a proper question for a special verdict, since the ratification, if any, would be merely evidentiary, bearing on the question whether the agreement relied upon as the consideration to support the guaranty was made.

4. Plaintiff testified that at a time when only he and defendant were present the guaranty "was written and signed by" defendant. It was a conceded fact that the guaranty itself, above defendant's signature, was not in her handwriting. *Held*, that it was not a prejudicial error for the court, in charging the jury, to state that plaintiff testified that he wrote the guaranty.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action to recover on an alleged contract of guaranty. It was claimed in the complaint that on March 19, 1890, O. D. Peck delivered his promissory note to plaintiff, obligating himself to pay him one year from the date thereof $2,000, with interest thereon from such date at the rate of ten per cent.; that on November 14, 1895, defendant signed a writing thereon guaranteeing the principal thereof, such writing being in these words: "For value received I hereby guarantee the payment of the principal on the within note;" that at the time of the commencement of this action there was due of such principal over and above payments by defendant $1,550. Judgment was demanded accordingly. Defendant answered, among other things, that she signed her name on the back of the note at the time alleged in the complaint, but that she had neither knowledge nor information sufficient to form a belief as to whether the alleged written guaranty was then thereon or not; and in any event that there was no consideration whatever to support it.

There was evidence to the effect that there was a writing on the note of some sort when defendant signed her name thereon, but as to whether it included the words "for value

received" the evidence was conflicting. The evidence was further to the effect that the maker of the note died testate prior to the signing of the guaranty; that defendant was his residuary legatee; that subsequent to her signing the guaranty she called at the bank where the note was left for collection and made several payments thereon; and that there was no consideration to support the guaranty, unless it was in that in consideration thereof plaintiff agreed not to file any claim on the note against the estate of the maker. As to whether there was such an agreement the evidence was in cônflict. The jury found specifically in favor of the defendant on both of such disputed matters, and thereon judgment was rendered for the defendant, from which plaintiff appealed.

For the appellant there was a brief by *A. G. Weissert,* attorney, and *M. H. Eaton* and *Frederick J. Eaton,* of counsel, and oral argument by *L. K. Eaton.*

For the respondent there was a brief by *Felker, Stewart & McDonald,* and oral argument by *F. C. Stewart.*

MARSHALL, J.  Respondent was permitted to testify generally in answer to a direct question that she did not receive any consideration for signing the guaranty. We are unable to see how, under any reasonable view of the case, appellant was prejudiced thereby, even if the question were improper, since there was no claim made that any consideration was rendered for the guaranty, unless as such appellant agreed not to file any claim against the estate of O. D. Peck, deceased, which was denied by respondent by evidence not objected to or objectionable.

Evidence on the part of respondent was admitted, under objection, tending to show that when she signed the guaranty her rights as residuary legatee of O. D. Peck were valueless,—as bearing on the probability of whether she acted under the circumstances testified to by appellant. We can-

not agree with the latter's counsel that such evidence was im-
material. There was a square conflict between him and
respondent as to whether the alleged agreement was made.
It was perfectly obvious that she had no financial reason for
signing the guaranty, unless she at least supposed she had a
subsisting interest in the estate of O. D. Peck, deceased, to
be conserved thereby. It was quite unnatural on the face
of things for her to bind herself, without consideration, to
pay the debt of the deceased. In that view evidence of facts
inconsistent with the making of the disputed contract was
perfectly proper upon elementary principles. True, if ap-
pellant supposed she had an interest in the estate of O. D.
Peck, deceased, which would be conserved by making such
a contract as the one claimed, it was immaterial whether
she had such interest or not. That is as far as the author-
ities go, cited to our attention by appellant on this branch of
the case. The evidence objected to, on the whole, was not
only to the effect that Peck left no estate out of which the
note could have been paid, but that respondent knew that
fact long before the making of the guaranty, and before he
died.

Complaint is made because the court refused to require
the jury to determine, in case they found in respondent's
favor that the words "for value received" were not on the
note when she signed it, whether after she knew of the addi-
tion thereto she ratified the same. The only claim of appel-
lant on that point was that she, with knowledge of the change
in the writing, if there were such change, made payments
thereon. Suppose she did and that the making thereof rati-
fied any change theretofore in the guaranty, it was a mere
circumstance bearing on the question of whether the con-
tract was made, relied upon as the consideration to support
the guaranty. Being a mere evidentiary matter, not a fact
in issue under the pleadings, it was not the proper subject
of a question for the special verdict.

The court by mistake said to the jury in instructions as to the special questions, "Mr. Peck testifies that he wrote the guaranty on the back of the note." He did not use those words, but did say that after the agreement was written the guaranty was signed by *Mrs. Lucinda W. Peck.* It is conceded, as we understand it, and as the fact appears to be from the evidence without room for reasonable controversy, that the writing above respondent's signature upon the note was not in her hand. According to plaintiff's evidence it was written when only he and respondent were present. So the reasonable meaning of his statement that the guaranty "was written and signed by *Mrs. Lucinda W. Peck,*" is that the guaranty was written by him and signed by her. That is the only construction of his evidence that will avoid viewing it so as to convict him of having testified wilfully false. While he did not use the words which the court said he did, clearly he used words of equivalent meaning.

The foregoing covers all the matters referred to by counsel for appellant as grounds for a reversal. The record appears to be free from any prejudicial error.

*By the Court.*—The judgment is affirmed.